UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:16-CR-081 JD |
| | ) | |
| DONNIE ALLISON (03) | ) | |

## OPINION AND ORDER

During a recorded interview with police on April 21, 2016, Donnie Allison made admissions concerning the involvement of himself and others in dealing drugs. Allison claims that about thirty-five minutes into the interview, officers promised him that he would not be charged federally. Based on this alleged promise, Allison divulged further information concerning the drug conspiracy.

Thereafter, Defendants Jalen Wilson, Gregory Brown, Eric Smith, Terry Byrd, Daniel Mallet, and Donnie Allison were charged in count 1 of a superseding indictment for conspiring to distribute over 100 grams of heroin, in violation of 21 U.S.C. § 846, from January through July 2016.[1] Donnie Allison was also charged in counts 4 and 5 of the superseding indictment for distributing heroin in violation of § 841, on or about April 7, 2016 and April 12, 2016, respectively.

Once indicted, Allison moved to dismiss the indictment and suppress his statements claiming that his confession was induced by the false promise that he would not face federal charges. After the motions were fully briefed, the Court held an evidentiary hearing. For the following reasons, the Court denies Allison's motion to dismiss [DE 75] and motion to suppress [DE 105].

---

[1] Defendant Jimmy Thomas has already pled guilty to being a member of the drug conspiracy as alleged in the original indictment.

# I. FACTS

In early 2016, Michigan City police officers Sergeant Ken Drake and Detective Willie Henderson became involved in a heroin investigation of Defendant Gregory Brown (known as "Black") who appeared to be a main source of heroin in the Michigan City area. The investigation involved the use of various confidential informants for the purchase of heroin from Brown's suspected associates, Jalen Wilson, Jimmy Thomas, Donnie Allison, Daniel Mallet, Terry Byrd, Eric Smith, and a juvenile suspect. The investigation revealed that this group was using several phones among themselves to set up drug sales.

Relevant here is the fact that two controlled buys were set up and executed on April 7th and 12th of 2016 with a suspect known by law enforcement as "D. "D" was then tipped off by one of the confidential informants, Michael Crump, that officers had executed drug buys with him. In an effort to explore cooperation, "D" told Crump that he wanted to talk to the police. Crump then reported to Sergeant Drake and Detective Henderson that he had an associate who wanted to talk to officers. As a result, on April 21, 2016, Officers Drake and Henderson met Crump in a parking lot where "D", later identified as Donnie Allison, got out of Crump's car and was transported to the MCPD. During the evidentiary hearing, both officers testified that until the interview began they did not realize that "D" was in fact Donnie Allison, despite the two controlled buys from him earlier that month and an unrelated encounter with Allison at his place of employment in 2015.

Submitted into evidence, the Court has reviewed the entirety of the videotaped interview. Officers Drake and Henderson identified Allison, addressed his *Miranda* warnings, and spoke with Allison about his extensive drug dealing since age eighteen and after his release from prison in August of 2013. Allison freely discussed how he received heroin from Brown and then sold to four or five others—even acknowledging that the officers had him photographed selling drugs

during the two controlled buys in April. Allison indicated that he was currently dealing about $20-$100 worth of heroin, one to three times a week.

About thirty-five minutes into the interview, Allison hesitated in providing further details concerning the amount of drugs that he and others had been distributing, noting that he wasn't "trying to push [him]self deep in the hole." (13:40:25). Allison explained at the suppression hearing that he was concerned about being federally prosecuted because he feared being sentenced as a career criminal, although he didn't express that specific concern directly to the officers. Sergeant Drake then explained to Allison that "this is a state case," while Detective Henderson clarified that "the conspiracy is the federal stuff." (13:40:50-58). Sergeant Drake then clearly stated: "At this point in time, we have no intention of pushing it federal." (13:41:00-02). It is these statements alone which Allison alleges created a promise that he would not be federally indicted.

After this exchange, Allison proceeded to provide additional information regarding Brown, including his suppliers and sellers, along with phone numbers used to set up drug deals. He also provided vague references about others distributing drugs, many of whom appear already known to police. But he said little if anything about his own involvement with those activities.

Even after the interview, Allison continued to provide information to the officers[2]— which Allison contends serves as further proof that he was cooperating pursuant to the officers' promise. However, Officers Drake and Henderson credibly testified that Allison was never enlisted as a CI because he was on probation[3] and they never promised him any type of leniency

---

[2] Allison introduced a series of text messages (Def's Exbs. A-DD) revealing his continuing communication and cooperation with police. Allison also refrained from telling Eric Smith about the ongoing investigation and helped Smith return from Illinois knowing Smith would likely be arrested.

[3] As proof of this fact, Officers Drake and Henderson explained that all confidential informants must complete a MCPD CI written agreement (Gov't Exb. 5), which was never completed by Allison.

with respect to charges; rather, Allison continued to serve as a source of information on his own accord in an attempt to help himself. Detective Henderson confirmed his belief that there was a mutual understanding that Allison's being a source of information would be considered by any prosecutor, but there was never a promise with respect to the outcome of any case. In fact, Allison's testimony indicated that he was hopeful that his assistance would be rewarded by the officers making "a recommendation" with respect to any charges.

Officers Drake and Henderson testified that at the time of the interview federal authorities were not involved in the case. Sergeant Drake explained that at that time, the investigation involved only controlled narcotics purchases which would normally be presented to the state prosecutor. In addition, more investigative work needed to be done, which ultimately involved conducting more than an additional dozen controlled buys.

The testimony of Drug Enforcement Administration Special Agent David Ritchie corroborated the fact that federal authorities did not learn about the state investigation until the MCPD officers informed Special Agent Ritchie about it in late May or early June. Special Agent Ritchie became involved in the investigation in early July, about which time he conducted an interview with Allison. Ritchie disclosed that he was a federal agent. He testified that during that interview Allison never suggested he had been promised immunity from federal prosecution. Further, Special Agent Ritchie knew about Allison's assisting other police departments, but not the MCPD. Shortly thereafter, Special Agent Ritchie prepared a report and brought the case to the attention of the United States Attorney's Office.

Subsequently, Allison was federally indicted for conspiring to distribute over 100 grams of heroin, in violation of § 846, from January through July 2016, and for distributing heroin on or about April 7th and 12th of 2016, in violation of § 841. Allison submits that the indictment ought

to be dismissed or his statements suppressed because the officers of the Michigan City Police Department promised that he would not be federally prosecuted. Allison's attorney relies solely on the conversation already detailed by the Court at about the thirty-five minute mark of the interview. During the hearing he confirmed that no other remarks made by law enforcement during the course of their investigation are the subject of the instant motions.[4]

## II. DISCUSSION

Allison argues that the alleged promise not to be federally prosecuted should be enforced, resulting in the dismissal of the indictment. Alternatively, he argues that the alleged promise rendered his confession involuntary and that the statements should therefore be suppressed.

An incriminating statement is voluntary if it is "the product of rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Villalpando*, 588 F.3d 1124, 1128 (7th Cir. 2009) (citing *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998)). The Seventh Circuit has made clear that while a false promise of leniency may render a statement involuntary, police tactics short of a false promise are usually permissible. *See*, *e.g.*, *United States v. Kontny*, 238 F.3d 815, 818 (7th Cir. 2001); *Sprosty v. Buchler*, 79 F.3d 635, 646–47 (7th Cir. 1996); *United States v. Baldwin*, 60 F.3d 363, 365 (7th Cir. 1995), vacated and remanded on other grounds, 517 U.S. 1231 (1996); *United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir. 1990). "Trickery, deceit, even impersonation do not render a confession inadmissible . . . unless government agents make threats or promises." *Kontny*, 238 F.3d at 817.

---

[4] The Court notes for the record that Allison does not contend that he was unlawfully detained (or even detained at all) during the interview which he voluntarily arrived at and left on his own accord. And despite the fact that the interview was not a custodial one, Allison was *Mirandized* so as to proceed with caution. Accordingly, the Court addresses Allison's sole contention which is Officers Drake and Henderson promised him during the April 21st interview that he would not be federally prosecuted.

5

And a confession induced by a promise "to bring cooperation by the defendant to the attention of prosecutors do[es] not render a confession involuntary." *United States v. Charles*, 476 F.3d 492, 497 (7th Cir. 2007). The burden is on the government to prove the voluntariness of Allison's statements by a preponderance of the evidence given the totality of the circumstances. *Villalpando*, 588 F.3d at 1128–29.

Allison's motions are both denied because the Court concludes that a promise not to prosecute Allison federally was never made. Looking at the totality of the circumstances, Allison voluntarily chose to speak with officers after realizing he'd sold drugs to a confidential informant. Although not in custody, Allison was *Mirandized*. Allison then freely spoke of his drug activity, including the frequency and quantities of heroin that he was dealing, along with the name of his supplier. It wasn't until about thirty-five minutes into the interview when Allison appears to hesitate about providing further details relative to other individuals working for Brown. The officers then made clear that "at this point in time" they were pursuing a state case, while the conspiracy could only be a federal matter.

Thus, when the officers' comments are put into context, it is clear that neither Sergeant Drake nor Detective Henderson indicated that Allison would not face federal charges if he continued to cooperate and provide information. In fact, the actual statements confirm that the opposite was true—Detective Henderson noted that the "conspiracy" was a federal issue, and Sergeant Drake specifically communicated his *present* lack of intention to push the case toward a federal prosecution. Simply put, the officers did not promise to control the fate of any future prosecution in federal court. *See, e.g., Villalpando*, 588 F.3d at 1128–30 (reasoning that the statement "we don't have to charge you" did not represent a solid offer of leniency). Thus, given the totality of the circumstances, it cannot be said that Officers Drake or Henderson made a

promise at all, let alone one that was materially false or sufficient to overbear Allison's free will. It also cannot be said that the circumstances of Allison's interview were sufficient to render his statements involuntary.

The lack of any promise is sufficient to deny Allison's motions. However, even assuming a promise was made during the interview, the evidence clearly reveals that no federal authorities were involved in the investigation until at least a month after the April 21st interview. Additionally, Officers Drake and Henderson had no authority to bind the United States Attorney's Office with respect to the indictment of Allison. Accordingly, nothing the MCPD officers said could have prevented federal prosecutors from charging Allison in a federal forum. *See United States v. Fuzer*, 18 F.3d 517, 520 (7th Cir. 1994) (denying the defendant's request to vacate his conviction and noting that the record contains no evidence that the ATF agents promised the defendant that he would not be prosecuted in federal court or that the ATF agents were authorized to bind the United States Attorney even if they did make such a promise); *United States v. Eliason*, 3 F.3d 1149, 1153 (7th Cir. 1993); *see also Staten v. Neal*, 880 F.2d 962, 966 (7th Cir. 1989) ("the federal government was not bound by an agreement made by the defendant and state agents") (citing *United States v. Long*, 511 F.2d 878 (7th Cir. 1975)).

Furthermore, by the time the alleged promise was made (again, near the thirty-five minute mark of the interview), Allison had already admitted to Officers Drake and Henderson that he had dealt drugs to a CI on April 7th and 12th, and that Brown was his supply source. Thus, there is no basis to conclude that it would be fundamentally unfair (as Allison argues, *see, e.g., United States v. Rodman*, 519 F.2d 1058 (1st Cir. 1975) (per curiam)) for the federal charges to be pursued based on this information. Moreover, to the extent the conspiracy charge is supported by facts revealed by Allison after the thirty-five minute mark of the interview, again,

7

the record reveals that no promise was made, let alone by federal government actors. Instead, the Court believes that Allison continued to cooperate because he was *hoping* to garner a good recommendation from officers with respect to any charges. But there is no evidence to suggest that Allison could have relied on some promise of leniency thereby rendering this federal prosecution fundamentally unfair. *See United States v. Andrus*, 775 F.2d 825, 845 (7th Cir. 1985) (when a defendant acts to his detriment in reliance upon governmental promises, the government must carry out its representations) (discussing *Santobello v. New York*, 404 U.S. 257 (1971)).

Therefore, the Court finds that Allison has failed to establish any basis upon which any evidence in this case could be suppressed or the charges in the indictment dismissed.

### III. CONCLUSION

For those reasons, the Court DENIES the motion to dismiss [DE 75] and the motion to suppress [DE 105].

SO ORDERED.

ENTERED: March 6, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court