UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:16-CR-081 JD |
| | ) | |
| DONNIE ALLISON (03) | ) | |

## OPINION AND ORDER

On March 6, 2017, the Court denied Defendant Donnie Allison's motions to dismiss and suppress after holding an evidentiary hearing [DE 186]. In relevant part, the Court rejected Allison's contention that during a recorded interview on April 21, 2016, Michigan City Police Officers Drake and Henderson promised Allison that he would not be federally prosecuted. *Id*. The Court further concluded that even had such a promise been made, the MCPD officers did not have any authority to prevent federal prosecutors from charging Allison in a federal forum. *Id*. Allison seeks reconsideration of that decision [DE 210].

No federal rule or statute allows a motion to reconsider in a criminal case, but reconsideration motions are accepted as a common-law practice. *See United States v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014) (citation omitted). Motions to reconsider in criminal cases are "treated just like motions in civil cases." *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010). Thus, a motion to reconsider should not be viewed as a second opportunity for the losing party to make its strongest case or to dress up arguments that previously failed. *United States v. Uribe*, No. 2:10-CR-17-JMS-CMM, 2011 WL 5088646, at *1 (S.D. Ind. Oct. 25, 2011) (citation omitted). To the same effect, a motion to reconsider is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier. *Id*. (other citation omitted). Instead, a motion to reconsider is appropriate where the court has misunderstood a party, where the court has made a decision outside the adversarial issues

presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

Allison's briefs requesting reconsideration [DE 210; DE 218] do not identify any grounds for which reconsideration would be appropriate. *See id.* Instead, as the Government contends [DE 213], Allison simply relies on the very same facts already considered by the Court when it determined that Officers Drake and Henderson did not promise Allison that he would avoid future federal prosecution by cooperating. Because the Court already concluded that no such promise was made, Allison appears to pose a new argument that the promise actually made by the MCPD officers was that they would not *refer* the matter (or turn their investigatory results over) to federal authorities. But Allison had every opportunity to raise this argument for the Court's initial review of the motion, and because he failed to do so the argument is waived. *See Uribe*, 2011 WL 5088646, at *4.

Considering the merits of Allison's new argument still would not affect the propriety of this Court's previous ruling. The only facts alleged to support any promise occurred at about the thirty-five minute mark of the April 21st interview, wherein once Allison hesitated in providing further details concerning his drug dealing, Sergeant Drake explained to Allison that "this is a state case," while Detective Henderson clarified that "the conspiracy is the federal stuff." (13:40:50-58). Sergeant Drake also stated: "At this point in time, we have no intention of pushing it federal." (13:41:00-02).

During the evidentiary hearing, Officers Drake and Henderson testified that at the time they interviewed Allison on April 21st, the case was the type of case that would normally be

presented to the local prosecutor, but more investigative work needed to be done. In fact, approximately another eleven undercover drug transactions were executed before late May or early June (Gov't Exb. 6), when ultimately the MCPD officers approached DEA Special Agent David Ritchie to inquire whether the case should become a federal investigation.

The Court concludes that the totality of the circumstances establish that the MCPD officers unequivocally communicated to Allison their *present intent* not to turn the case over to the federal authorities, but that the conspiracy could already be a federal matter. When put in context, no other reasonable interpretation could be gleaned from the use of the phrases "[a]t this point in time" and "the conspiracy is the federal stuff." Thus, the Court rejects Allison's contention that the MCPD officers promised that they would not later refer the case to the feds.

In addition, there is no evidence to suggest that the officers' statements were false or deceitful when they were made. The record facts demonstrate that the Michigan City Police Department was not working with federal authorities on this case at the time of Allison's interview, nor is there any indication that they intended to do so. Rather, the MCPD officers did not approach the DEA about the investigation for at least another month after having conducted numerous other undercover drug transactions involving several other suspects. Thus, the facts of this case do not support the making of any promise (let alone a false one) that the case would never be referred to the federal authorities. It also cannot be said that the circumstances of Allison's interview were sufficient to make Allison's confession involuntary. *See, e.g.*, *United States v. Kontny*, 238 F.3d 815, 818 (7th Cir. 2001); *Sprosty v. Buchler*, 79 F.3d 635, 646–47 (7th Cir. 1996); *United States v. Baldwin*, 60 F.3d 363, 365 (7th Cir. 1995), vacated and remanded on other grounds, 517 U.S. 1231 (1996); *United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir. 1990). In other words, throughout the interview Allison was in a position to weigh

the cost of giving information to the officers about his criminal activity that they might not otherwise have discovered against any benefit he might receive for his continued cooperation. Policemen are not a fiduciary of the suspect and they are "allowed to play on a suspect's ignorance, his anxieties, his fears, and his uncertainties; they just are not allowed to magnify those fears, uncertainties, and so forth to the point where rational decision becomes impossible." *See Rutledge*, 900 F.2d at 1130. The record evidence supports the determination that there was no false or misleading promise that prevented Allison from making a rational decision about whether to continue providing information to the officers. Even Allison's testimony at the evidentiary hearing indicated that he was hopeful that his assistance would be rewarded by the officers making "a recommendation" with respect to any charges. The Court therefore concludes that Allison's statements to police were voluntary.

Ultimately, Allison's new argument is clearly contradicted by the record facts previously considered by the Court and relied on by Allison in moving for reconsideration. Accordingly, based on the foregoing discussion and the contents of this Court's prior Order [DE 186] (as incorporated in its entirety herein), Allison's motion for reconsideration is DENIED [DE 210].

SO ORDERED.

ENTERED: April 25, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court